1 | Ognian Gavrilov (SBN 258583)
2 | Sheila W. Pendergast (SBN 251562) (*Designated counsel for service*)
  | Michael Coleman (SBN 295462)
3 | GAVRILOV & BROOKS
  | 2315 Capitol Avenue
4 | Sacramento, California 95816
  | Telephone: (916) 504-0529
5 | Email: ognian@gavrilovlaw.com
  | Email: spendergast@gavrilovlaw.com
6 | Email: mcoleman@gavrilovlaw.com
7 |
8 | Attorneys for Plaintiffs Disbar Corporation,
  | d.b.a. 58 Degrees & Holding Co.; Visage Salon LLC;
9 | Sparkle Nail Bar Inc.; Kent C. Souza; Victoria Perry;
  | Jewel Reyes; Bryan Cubillos

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

(SACRAMENTO DIVISION)

| | |
|---|---|
| DISBAR CORPORATION, d.b.a. 58 DEGREES & HOLDING CO., a California corporation; VISAGE SALON LLC, a California limited liability company; SPARKLE NAIL BAR INC., a California corporation; KENT C. SOUZA, an individual; VICTORIA PERRY, an individual; JEWEL REYES, an individual; BRYAN CUBILLOS, an individual, <br><br>  Plaintiffs, <br><br> v. <br><br> GAVIN C. NEWSOM, in his official capacity as Governor of the State of California; ERICA S. PAN, M.D., MPH, in her official capacity as Acting State Public Health Officer for the California Department of Public Health; COUNTY OF SACRAMENTO – DEPARTMENT OF HEALTH SERVICES, a | No. <br><br> **COMPLAINT FOR 42 U.S.C. § 1983 – VIOLATION OF THE DUE PROCESS OF THE FOURTEENTH AMENDMENT; 42 U.S.C. § 1983 – VIOLATION OF EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT** |

public entity; OLIVIA KASIRYE, M.D., M.S., in her official capacity as Health Officer of the County of Sacramento,

Defendants.

Plaintiffs DISBAR CORPORATION, d.b.a. 58 DEGREES & HOLDING CO. ("58 Degrees"), VISAGE SALON LLC ("Visage"), SPARKLE NAIL BAR INC. ("Sparkle"), KENT C. SOUZA ("Souza"), VICTORIA PERRY ("Perry"), JEWEL REYES, ("Reyes"), and BRYAN CUBILLOS ("Cubillos") hereby allege as follows:

**INTRODUCTION**

In March 2020, the State of California ("State") and local governments within its borders, including defendant County of Sacramento ("County"), began scrambling to formulate a response to the novel coronavirus ("COVID-19"). In those initial days and weeks, government officials issued a host of restrictive orders which prevented citizens from leaving their home for "non-essential" reasons, and prohibited businesses deemed "non-essential" to infrastructure from operating.

As scientists, health officials and elected officials learned more about the virus, restrictions began to ease. People were allowed out of their homes, and businesses were once again allowed to operate, albeit with new health conscious restrictions in place.

From May until late November 2020, Californians, Sacramentans in particular, were able to go about their daily lives and run their business in this "new normal." Transmission rates did not suddenly spike as a result of hair and nail salons reopening, or citizens' enjoying the company of one another at an outdoor cafe.

However, as the Thanksgiving holiday began to approach, health officials across the country began to warn of a sudden and dramatic increase in COVID-19 infections and hospitalizations if families congregated in large groups for the holiday. Exactly one-week after the Thanksgiving holiday, the State issued a new Regional Stay at Home Order ("Regional

-Complaint, pg. 2-

Order"), which mandates that if Intensive Care Unit ("ICU") capacity in a given region should dip below 15%, citizens may no longer leave their homes for reasons not expressly approved by the government.  Likewise, all businesses not deemed "essential" by the State may not operate.

On December 9, 2020, the County of Sacramento ("County") announced regional ICU capacity dipped below 15%.  In response, the County issued its own Order, which mirrors that issued by the State.

As alleged herein, Defendants' Orders are arbitrary, capricious, irrational, and not reasonably tailored to achieve a compelling governmental interest.  The Lock Down Orders are draconian, dictatorial, and fundamentally un-American.  The Shut Down Orders disregard the science previously acknowledged and accepted by both the State and County.

Making matters worse, the State and County Orders have no defined end date.  Without immediate judicial intervention, these Orders shall stay in place until State and County, in their sole and arbitrary discretion, determine otherwise.

While a temporary curb of fundamental constitutional freedoms might have been momentarily tolerable during an initial period of heightened emergency, it has been nearly a year since the coronavirus reached our shores.  As the Honorable Justice Gorsuch recently observed in *Roman Catholic Dioceses of Brooklyn v. Cuomo*, "Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical."

## THE PARTIES

1. Plaintiff DISBAR CORPORATION, d.b.a. 58 Degrees & Holding Co. is and was at all material times herein a California corporation doing business in the County of Sacramento.

2. Plaintiff VISAGE SALON LLC is and was at all material times herein a California limited liability company doing business in the County of Sacramento.

3. Plaintiff SPARKLE NAIL BAR INC. is and was at all material times herein a California corporation doing business in the County of Sacramento.

4. 58 Degrees, Visage, and Sparkle are collectively referred to herein as "Business Plaintiffs."

5. Plaintiff KENT C. SOUZA is and was at all material times herein an individual residing and working in the County of Sacramento.

6. Plaintiff VICOTRIA PERRY is and was at all material times herein an individual residing and working in the County of Sacramento.

7. Plaintiff JEWEL REYES is and was at all material times herein an individual residing and working in the County of Sacramento.

8. Plaintiff BRYAN CUBILLOS is and was at all material times herein an individual residing and working in the County of Sacramento.

9. Souza, Perry, Reyes, and Cubillos are collectively referred to herein as "Individual Plaintiffs."

10. Defendant GOVERNOR GAVIN C. NEWSOM, named in his official capacity ("Gov. Newsom") is the Governor of the State of California ("State") and is generally charged with enforcing the laws of the State and issued the Orders at issue in this lawsuit.

11. Defendant ERICA S. PAN, M.D., MPH, named in her official capacity ("Dr. Pan"), is the Acting State Public Health Officer for the California Department of Public Health and is generally charged with enforcing the laws regarding the public health of the State of California and its residents, and issued the Orders at issue in this lawsuit including the COVID-19 Stay-At-Home and Closure Orders as alleged more fully herein.

12. Defendant COUNTY OF SACRAMENTO—Department of Public Health ("County") is a public entity operating and located in Sacramento County, and is generally charged with enforcing the law regarding the public health of the County and its residents, and issued the Orders at issue in this lawsuit including the COVID-19 Stay-At-Home and Closure Orders as alleged more fully herein.

13. Defendant OLIVIA KASIRYE, M.D., MS, named in her official capacity ("Dr. Kasirye"), is the Health Officer of the County of Sacramento and is generally charged with enforcing the laws regarding the public health of the County and its residents, and issued the Orders at issue in this lawsuit including the COVID-19 Stay-At-Home and Closure Orders as alleged more fully herein.

## JURISDICTION AND VENUE

14. The court has original jurisdiction under 28 U.S.C. 1331, 1334(a)(3)(4), which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b) because the events giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

### A.   COVID-19 AND THE TIMELINE OF EVENTS

16. One year ago—in December 2019—the State of California ("State") began working in close collaboration with the national Centers for Disease Control and Prevention (CDC), with the United States Health and Human Services Agency, and with local health departments to monitor and plan for the potential spread of COVID-19 to the United States after the disease was first identified in Wuhan City, Hubei Province, China.

17. In January 2020, the CDC activated its Emergency Response System to provide ongoing support for the response to COVID-19 across the country. Around the same time, the California Department of Public Health ("CDPH") activated its Medical and Health Coordination Center.

18. On March 2, 2020, the Office of Emergency Services activated the State Operations Center to support and guide state and local actions to preserve public health. CDPH was in regular communication with hospitals, clinics and other health providers and provided guidance to health facilities and providers regarding COVID-19.

19. On March 4, 2020, Gov. Newsom issued a Proclamation of a State of Emergency.

20. On March 19, 2020, Newsom issued Order N-33-20, which required "all individuals living in the State of California *to stay home or at their place of residence* except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19."

21. Order N-33-20 further stated, "[I]n consultation with the Director of the Governor's Office of Emergency Services, I [Gov. Newsom] may designate additional sectors as critical in order to protect the health and well-being of all Californians."

22. Order N-33-20 further stated, "The federal government has identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof, I order that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being."

23. Finally, Order N-33-20 stated it was "being issued to protect the public health of Californians. The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19. Our goal is simple, we want to bend the curve and disrupt the spread of the virus."

24. Implicit in Order N-33-20 was the right of Californians to leave their homes for the limited purpose of obtaining groceries and other limited necessities of life, though such right was not expressly enumerated.

25. By order of the same day, Sacramento County issued its own order defining the "Essential Activities" that individuals were permitted to engage in outside their residence.

26. On May 4, 2020, the State modified its Executive Order by providing a four-stage framework for reopening businesses, spaces and activities based on a risk assessment, and giving more authority to local health officials to implement health measures less restrictive than statewide public health measures.

27. As part of the four-stage framework for reopening, Sacramento County restaurants reopened for outdoor dining on May 22, 2020, the Friday before Memorial Day.

28. On August 29, 2020, the State of California released its Blueprint for a Safer Economy ("Blueprint") to permit the reopening of certain businesses and activities. The Blueprint assigns every county in California a tier category based on its test positivity and

adjusted case rate for tier assignment. Two measures—case rate and test positivity—determine when a county can move to a less restrictive tier.

29. Pursuant to the Blueprint, when a county is in Tier 1, the most restrictive tier, the only things that are totally closed are bars, breweries and distilleries that do not serve food, live sports with audience, and amusement parks. In Tier 1, restaurants and wineries can remain open outdoors with modifications. In Tier 1, hair salons and barber shops may remain open indoors with modifications.

30. On August 31, 2020, County implemented a health order that aligned with California's Blueprint.

31. On November 9, the State announced an "emergency brakes action" that made it easier to switch tiers more frequently, and to be moved back more than one tier at a time if necessary.

32. In mid-November, Sacramento County Department of Health Services Director Dr. Peter Beilenson ("Dr. Beilenson") publicly acknowledged in an interview with Capitol Public Radio that data from contact tracing shows that "**private gatherings and parties are more likely to cause outbreaks than restaurants and gyms in Sacramento County**." On November 13, in anticipation of the Thanksgiving holiday, CDPH issued its guidance for private gatherings, and stated "**Gatherings that occur outdoors are significantly safer than indoor gatherings.** All gatherings must be held outside in the Purple Tier."

33. On November 21, the State issued a Limited Stay-At-Home Order ("Limited Stay-At-Home Order"), establishing a curfew between 10:00 p.m. and 5:00 a.m. for counties in Tier 1. When the curfew is in place, all "non-essential" activities—as defined by the State—were directed to stop. The State attempted to justify this intrusive measure as follows: "Interactions during these hours are usually social in nature, and reducing those interactions helps reduce the spread of COVID-19."

34. On December 3, the State issued its current Regional Stay-At-Home Order ("Regional Order"). The order separates California into 5 regions (Northern California, Bay Area, Greater Sacramento, San Joaquin Valley, Southern California), and provides that when a

region first falls below 15% adult ICU capacity, the Regional Order goes into effect the next evening at 11:59 pm. When the order is in effect, "All gatherings with members of other households are prohibited"; and "All individuals . . . shall stay home or at their place of residence except as necessary to conduct activities associated with the operation, maintenance, or usage of critical infrastructure" as unilaterally defined by the State.

35. All restaurant dining, outdoors or indoors, is prohibited. However, even when the Regional Order is in effect, gyms and fitness centers may operate outdoors, retail may operate indoors, and workers supporting the entertainment industry, including craft services—i.e., food catering services—and hair-and-makeup artists may operate indoors and outdoors.

36. The Regional Order mandates: "Non-essential businesses, those that are NOT defined as critical infrastructure, must close for in-person activities with the exception of retail. Essential work is permitted to continue." It further provides "state guidelines" for businesses permitted to be open for combatting the spread of COVID-19.

37. The Regional Order uses a different definition of "Essential Critical Infrastructure Workers" which is broader than the 16 categories identified by the federal government, and adopted in Newsom's March 19 N-33-20 Order. The current list of "Essential Critical Infrastructure Workers" specifically includes: "Workers supporting the entertainment industries, studios, and other related establishments such as establishments that provide content for professional broadcast, provided they follow COVID-19 public health guidance around physical distancing."

38. On December 9, County issued Order Of The Health Officer Of The County Of Sacramento Implementing The State Of California Regional Stay At Home Order And Directing All Individuals Living In The County To Stay At Home Or At Their Place Of Residence And Closing Certain Operations ("County Order"). The County Order states that the County's ICU capacity has fallen below 15%, thus triggering the State's Regional Order, which went into effect at 11:59 p.m. on Thursday December 10.

39. On or about December 10, 2020, Dr. Beilenson sat for an interview with National Broadcasting Company ("NBC") local affiliate KCRA. The interviewer asked him

why the ICU capacity is a concern.  Dr. Beilenson stated: "**what we want to avoid, which we are actually not avoiding particularly**, are cases where you have two severely ill or severely injured people and you have to make a decision between who is going to go to the ICU and who may not be able to go to the ICU.  And that's what we are trying to avoid with the stay-at-home order. **It's not that 10% or 5% [ICU bed] availability is never heard of.  For example, during flu season we often get to 10% or 15% vacancy.** But what we're trying to do is keep it from going over the line, if you will, until there is no beds available—in which case you have to make very difficult decisions."

40. Dr. Beilenson expressly informed the State the outdoor dining in Sacramento County should not be shut down when the Regional Order is in place, but his advice was rejected.

**B.    STATE AND COUNTY'S ORDERS ARE UNCONSTITUTIONAL**

41. The Regional and County Stay-At-Home Orders currently in place in Sacramento County restrict Individual Plaintiffs' right to move throughout the community.  The Stay-At-Home Orders prevent Individual Plaintiffs from meeting with small groups of friends (even outdoors), small groups of family (even outdoors), and from travelling through the community, unless such travel is for a specific state sanctioned purpose.  If the State and County do not designate and/or recognized Individual Plaintiffs' movement outside the confines of their own home, Plaintiffs' activities are deemed "non-essential," and thus, forbidden.

42. Individual Plaintiffs all work for 58 Degrees.  58 Degrees is a wine bar and restaurant.  The customers at 58 Degrees patronize this landmark establishment for its dine-in experience (including outdoor dining).  It serves fine wine and food not conducive to pick-up and carry-out orders.  Accordingly, because the State and County Shut-Down Orders prevent 58 Degrees from offering inside and outside dining, 58 Degrees must shut-down until further notice by State and County.  Individual Plaintiffs, therefore are out of work.

43. Perry is a member of the African American Community. Reyes and Cubillos are members of the Latino community.[1] These communities are disproportionally impacted by the Stay-At-Home and Shut Down Orders. Plaintiffs are informed and believe, and thereon allege that State and County officials were aware that their Orders would have, and indeed do have, an unfair and disproportionate impact on Minority Plaintiffs and those similarly situated. Minority Plaintiffs are informed and believe, and thereon allege that the Stay-At-Home and Shut Down Orders are the product of institutional racism, and that they and member of their communities are unfairly targeted and disproportionally affected by the Stay-At-Home and Shut Down Orders.

44. As a result of State and County's Stay-At-Home and Shut Down Orders, Business Plaintiffs are forced to shut down their businesses indefinitely. However, other similarly situated businesses such as craft services and hair and makeup personnel who cater to the entertainment industry are permitted to continue operating during this period.

45. Business Plaintiffs are informed and believe, and thereon allege that State and County, and those working on their behalf, specially exempted from the Stay-At-Home and Shut Down Orders large institutional businesses and other smaller businesses which cater to and are integral to the operation of large industries that have sway and political influence. Business Plaintiffs are informed and believe, and thereon allege that because they cannot and do not provide large campaign donations to State and County officials, State and County are unfairly targeting and/or disregarding Business Plaintiffs, deeming them "non-essential," and therefore, not entitled to operate until further notice. Business Plaintiffs are informed and believe, and thereon allege that the Stay-At-Home and Shut Down Orders are likely to prevent them from reopening once State and County, in their sole and arbitrary discretion, decide to lift the Orders.

46. Sparkle, like the majority of nail salons in the United States and California, is a Vietnamese owned business. A recent study by the University of California, Los Angeles found

---

[1] Perry, Reyes, and Cubillos are collectively referred to herein as "Minority Plaintiffs."

that nearly 80% of all nail salons are owned by Vietnamese immigrants and those of Vietnamese decent.

47. Sparkle is informed and believes, and thereon alleges that the Stay-At-Home and Shut Down Orders are aimed at hurting and/or killing it and similarly situated Vietnamese owned businesses. Indeed, in referring to persons who own these businesses, government officials, including officials working on behalf of Defendants, have publicly referred to Asian business owners as "yellow people" when discussing the impact the State and County Orders will have on certain minority owned and minority run businesses. Sparkle is informed and believes, and thereon alleges that the Stay-At-Home and Shut Down Orders are the product of ingrained institutional racism.

## FIRST CLAIM FOR VIOLATION OF SUBSTANTIVE DUE PROCESS
## 42 U.S.C. § 1983
### (Against All Defendants)
### (By Individual Plaintiffs)

48. Individual Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 47 of this Complaint.

49. State's December 3, 2020 Regional Order and County's December 9, 2020 County Order restrict Individual Plaintiffs' right to freedom of movement throughout the community. The right to travel through the community is a fundamental right guaranteed by the Constitution.

50. State and County's Stay-At-Home Orders unreasonably and unconstitutionally restrict Individual Plaintiffs' freedom of movement and association. Pursuant to these Orders, Plaintiffs may not leave their homes unless the purpose of movement is expressly sanctioned by State and County, respectively. Likewise, the Stay-At-Home Orders expressly prevent Individual Plaintiffs from meeting with friends and/or family, even outside, in small gatherings, unless expressly sanctioned by State and County, respectively.

51. State and County's repressive Stay-At-Home Orders are unprecedented in this country. State and County's Stay-At-Home Orders are more akin to the mandates issues by past and current authoritarian dictators, unconstrained by any constitution or notions of liberty.

52. Individual Plaintiffs have a protected liberty interest in their right to live without arbitrary governmental interference.

53. Individual Plaintiffs have a right to protection from arbitrary action of the government.

54. Substantive Due Process prevents the government from engaging in conduct that "shocks the conscious" or that interferes with the concept of ordered liberty.

55. The Lock Down Orders issued by State and County constitute irrational, arbitrary and capricious conduct that interferes with Individual Plaintiffs' liberty interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

56. Defendants' actions constitute official policy, custom and practice of the State of California and County of Sacramento. Defendants' actions shock the conscience of the citizens of this State and County.

57. Defendants' actions do not comport with traditional ideas of fair play and decency.

58. Individual Plaintiffs have the right to travel through the community and lawfully meet with whom they please, free of governmental approval and interference.

**SECOND CLAIM FOR VIOLATION OF SUBSTANTIVE DUE PROCESS**

**42 U.S.C. § 1983**

**(Against All Defendants)**

**(By Business Plaintiffs)**

59. Business Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 58 of this Complaint.

60. State's December 3, 2020 Regional Order and County's December 9, 2020 County Order prevent Business Plaintiffs from operating their business. The right to earn a

living in one's chosen profession is a fundamental right protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

61. After issuing the initial shut down orders in March 2020, State and County eased restrictions in May to allow Business Plaintiffs to operate, with modified restrictions in place given the COVID-19 pandemic.

62. Business Plaintiffs operated their respective businesses throughout the summer months subject to these new guidelines, and did so without incident. The operation of Business Plaintiffs' respective businesses are not the source of the recent surge in COVID-19 throughout California, or the recent dip in ICU capacity in the Region. To the contrary, ICU capacity regularly drops below 15% during this time of year as a result of seasonal flu. There is no rational basis between Defendants' recent Closure Orders and the current dip in regional ICU capacity.

63. State and County officials agree, understand, and recognize that the source of the recent surge in COVID-19 transmission, and the recent dip in regional ICU capacity, is not in any way connected to operation of Business Plaintiffs' respective businesses.

64. State and County officials have not articulated any criteria guiding their determination of what businesses are "essential," and thus, may operate, and which business are "non-essential," and thus, may not operate.

65. State and County officials' determination of what constitutes an "essential" business versus a "non-essential" business is irrational, arbitrary, and capricious.

66. Business Plaintiffs have a right to protection from arbitrary action of the government.

67. Substantive Due Process prevents the government from engaging in conduct that "shocks the conscious" or that interferes with the concept of ordered liberty.

68. The Shut Down Orders issued by State and County constitute irrational, arbitrary and capricious conduct that interferes with Business Plaintiffs' liberty interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

69. Defendants' actions constitute official policy, custom and practice of the State of California and County of Sacramento. Defendants' actions shock the conscience of the citizens of this State and County.

70. Defendants' actions do not comport with traditional ideas of fair play and decency.

### THIRD CLAIM FOR VIOLATION OF EQUAL PROTECTION
### 42 U.S.C. § 1983
### (Against All Defendants)
### (By Business Plaintiffs)

71. Business Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 70 of this Complaint.

72. The Equal Protection Clause of the Fourteenth Amendment forbids the government from denying "to any person within its jurisdiction the equal protection of the laws."

73. State and County's decision to classify Business Plaintiffs' respective businesses as "non-essential" and thus, unable to operate until further notice is arbitrary, irrational, and capricious. Business Defendants are similarly situated with craft service businesses that cater to the film and television industry, and with hair and make-up personnel who provide on-set beautification services for actors and television broadcasters ("Entertainment Counterparts"). While Entertainment Counterparts may operate while the State and County Orders are in effect, Business Plaintiffs may not.

74. There is no rational distinction between Entertainment Counterparts and Business Plaintiffs. Thus, State and County's Shut Down Orders violate the equal protection clause of the Fourteenth Amendment to the United States Constitution.

75. In issuing the State and County Shut Down Orders, Defendants disregarded the science, and their own experts, as a knee-jerk reaction to the sudden but anticipated spike in COVID-19 cases and hospitalizations following the Thanksgiving holiday. State and County's

Orders serve no other purpose than to arbitrarily provide cover to politicians who wish to demonstrate to the public that they have a plan, when no plan actually exists.

76. Further, Business Plaintiffs are informed and believe, and thereon allege that Defendants' determination as to which business are "essential" versus "non-essential" is political in nature. Defendants' Shut Down Orders reward businesses, industries, and unions that provide large campaign contributions to State and County officials. Business Plaintiffs are informed and believe, and thereon allege that the Shut Down Orders are intended to punish, and indeed do punish, smaller local businesses such as those owned and operated by Business Plaintiffs which cannot and do not provide large campaign contributions to State and County officials.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor, against Defendants jointly and severally, and seek relief as follows:

1. a Declaratory Judgment that issuance and enforcement of the Regional Order is unconstitutional for the reasons stated herein, and that the actions of State are unlawful and unconstitutional;
2. a Declaratory Judgment that issuance and enforcement of the County Order is unconstitutional for the reasons stated herein, and that the actions of County are unlawful and unconstitutional;
3. a Temporary Restraining Order enjoining State from enforcing the Regional Order, in particular the Lock Down Order and Shut Down Order;
4. a Temporary Restraining Order enjoining County from enforcing the County Order, in particular the Lock Down Order and Shut Down Order;
5. a permanent injunction to prohibit State from enforcing the Regional Order, in particular the Lock Down Order and Shut Down Order;
6. a permanent injunction to prohibit County from enforcing the County Order, in particular the Lock Down Order and Shut Down Order;

7. a preliminary injunction to prohibit State from enforcing the Regional Order, in particular the Lock Down Order and Shut Down Order;

8. a preliminary injunction to prohibit County from enforcing the County Order, in particular the Lock Down Order and Shut Down Order;

9. a declaration that the rights of Plaintiffs and the citizens of California and Sacramento County have been violated by the various actions of the Defendants and that said Defendants are enjoined from engaging in such violations and declaring them to be null and void *ab initio*;

10. award of costs and expenses, including reasonable attorneys' fees under 42 U.S.C. §§ 1983 and 1988; and,

11. such other relief as this Court deems just and proper.

DATED: December 14, 2020            GAVRILOV & BROOKS

/s/Ognian Gavrilov
/s/ Sheila W. Pendergast
By: /s/ Michael Coleman
Ognian Gavrilov
Sheila W. Pendergast
Michael Coleman
Attorneys for Plaintiffs
DISBAR CORPORATION d.b.a. 58 DEGREES & HOLDING CO., VISAGE SALON LLC, SPARKLE NAIL BAR INC., KENT C. SOUZA, VICTORIA PERRY, JEWEL REYES, and BRYAN CUBILLOS