UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISBAR CORPORATION, d.b.a. 58 DEGREES & HOLDING CO., a California corporation, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN C. NEWSOM, in his official capacity as Governor of the State of California, et al.,<br><br>Defendants. | No. 2:20-cv-02473-TLN-DB<br><br>**ORDER** |

This matter is before the Court on Plaintiffs Disbar Corporation d.b.a. 58 Degrees & Holding Co. ("58 Degrees"), Visage Salon LLC ("Visage"), Kent C. Souza ("Souza"), Victoria Perry ("Perry"), Jewel Reyes ("Reyes"), and Bryan Cubillos's ("Cubillos") (collectively, "Plaintiffs") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.). Defendants Gavin Newsom ("Newsom"), Erica S. Pan, M.D., MPH ("Pan"), County of Sacramento ("County"), and Olivia Kasirye, M.D, M.S. ("Kasirye") (collectively, "Defendants") filed oppositions. (ECF Nos. 14, 18.) Plaintiffs filed a reply. (ECF No. 21.) For the reasons set forth below, the Court DENIES Plaintiffs' motion.

///

///

1

### I.     Factual and Procedural Background

As of the date of this Order, COVID-19 has infected more than 76 million people and caused the deaths of 1.7 million people worldwide.[1] In the United States alone, COVID-19 has infected 17.8 million people and caused more than 316,000 deaths.[2] In California, there have been nearly 1.9 million cases and nearly 23,000 deaths.[3]

Plaintiffs challenge two orders enacted in response to the recent surge of COVID-19 cases: (1) the State of California's Regional Stay at Home Order ("Regional Order") issued December 3, 2020; and (2) Sacramento County's implementing Order ("County Order") issued December 9, 2020 (collectively, "the Orders").[4] The Regional Order separates California into regions and is triggered when a region's adult Intensive Care Unit ("ICU") capacity drops below 15 percent. (*See* ECF No. 4-23.) At issue in the instant case are the Regional Order's stay-at-home and business closure provisions, which will be discussed in more detail below. Sacramento County's ICU capacity fell below 15 percent on December 9, 2020. (*See* ECF No. 4-27.) Accordingly, Sacramento County issued the County Order, which implemented the Regional Order and took effect on December 10, 2020. (*See id.*)

Plaintiffs brought the instant action on December 14, 2020, asserting several claims against Defendants pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1.) Plaintiffs in this case are

---

[1]     *See* World Health Org., Coronavirus Disease (COVID-19) Pandemic, *available at* https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last accessed December 22, 2020).

[2]     *See* Cases in U.S., *available at* https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last accessed December 22, 2020).

[3]     *See* California COVID-19 by the Numbers, *available at* https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx (last accessed December 22, 2020).

[4]     Defendants request the Court take judicial notice of certain public documents regarding the COVID-19 pandemic and related orders. (*See* ECF No. 15; ECF No. 18-5.) Under Federal Rule of Evidence 201, a court can take judicial notice of a document when the subject "can be accurately and readily determined from the sources whose accuracy cannot reasonably be questioned." For the reasons stated in Defendants' requests and noting no opposition, the Court GRANTS the requests and takes judicial notice of the public records cited herein.

three Sacramento-area businesses (58 Degrees, a wine bar and restaurant; Visage, a hair salon; and Sparkle Nail Bar, a nail salon) (collectively, "Business Plaintiffs") and four individuals employed by 58 Degrees (Souza, Perry, Reyes, and Cubillos) (collectively, "Individual Plaintiffs"). (*Id.*) Plaintiffs allege the Orders violate their substantive due process and equal protection rights under the Fourteenth Amendment. (*Id.*) Plaintiffs also filed the instant Motion for a TRO seeking to enjoin Defendants from enforcing the Orders. (ECF No. 2.)

## II. STANDARD OF LAW

A TRO is an extraordinary remedy. The purpose of a TRO is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65. In general, "[TROs] are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010); *see also* L.R. 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, a preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). A preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test

to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for a preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for a preliminary injunction. *Id.* at 1134–35.

### III.  ANALYSIS

#### A.  Likelihood of Success on the Merits

Plaintiffs challenge two aspects of the Orders: (1) the stay-at-home provision for individuals; and (2) the closure provision for certain businesses.

##### i.  Stay-At-Home Provision

Individual Plaintiffs argue the stay-at-home provision violates substantive due process under the Fourteenth Amendment. (ECF No. 3 at 13.) The Regional Order requires individuals "to stay home or at their place of residence except as necessary to conduct activities associated with the operation, maintenance, or usage of critical infrastructure, as required by law, or as specifically permitted in this order." (ECF No. 4-23 at 2.) The Regional Order permits various types of gatherings: worship and political expression may take place outdoors; schools that previously reopened for in-person instruction may remain open; "all retailers" may operate indoors at no more than 20 percent capacity; and outdoor recreation facilities may continue to operate. (*Id.*) The Regional Order also states, "Nothing in this Order prevents any number of persons from the same household from leaving their residence, lodging, or temporary accommodation, as long as they do not engage in interactions with (or otherwise gather with) any number of persons from any other household, except as specifically permitted herein." (*Id.* at 3.) The County Order states, "In alignment with the [Regional Order], residents are required to stay at home as much as possible and minimize mixing with other households." (ECF No. 4-27 at 1.)

4

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). To establish a substantive due process claim, Plaintiffs must "show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). "The range of liberty interests that substantive due process protects is narrow and '[o]nly those aspects of liberty that we as a society traditionally have protected as fundamental are included within the substantive protection of the Due Process Clause.'" *Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir.), *cert. denied*, 139 S. Ct. 648 (2018) (citation omitted). "Substantive due process has, therefore, been largely confined to protecting fundamental liberty interests, such as marriage, procreation, contraception, family relationships, child rearing, education and a person's bodily integrity, which are 'deeply rooted in this Nation's history and tradition.'" *Id.* (citation omitted). Moreover, to constitute a violation of substantive due process, the alleged deprivation must "shock the conscience and offend the community's sense of fair play and decency." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (citation and quotation marks omitted); *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.").

Individual Plaintiffs' substantive due process claims are unlikely to succeed on the merits for four reasons. First, the stay-at-home provisions do not shock the conscience. *See, e.g.*, *Herrin v. Reeves*, No. 3:20CV263-MPM-RP, 2020 WL 5748090, at *9 (N.D. Miss. Sept. 25, 2020) ("[T]his court finds the notion that restrictions designed to save human lives [from COVID-19] are 'conscious shocking' to be absurd and not worthy of serious discussion."); *Parker v. Wolf*, No. 20-CV-1601, 2020 WL 7295831, at *15 n.20 (M.D. Pa. Dec. 11, 2020) (finding COVID-19 contract tracing and mask mandate orders to be "at worst, minor and fleeting inconveniences, especially when compared to the widespread infectiousness and death that Defendants credibly seek to avoid through these two orders").

///

///

Second, Plaintiffs fail to persuade the Court that a due process liberty interest is at stake. Plaintiffs argue they have a fundamental right "to be out and about in public."[5] (ECF No. 3 at 14.) However, Defendants correctly point out that the Ninth Circuit has declined to rule on whether the Constitution guarantees the right of intrastate travel.[6] *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 n.7 (9th Cir. 1997); *see also Mendoza v. Garrett*, 358 F. Supp. 3d 1145, 1173 (D. Or. 2018) ("[N]either the Supreme Court nor the Ninth Circuit has recognized a constitutional right to intrastate travel.").

Third, even if Plaintiffs have a constitutional right to travel through the community, it is unclear whether the Orders infringe on such a right. Plaintiffs' contention that the Orders "mandate virtual house arrest" is a vast overstatement. (ECF No. 3 at 16.) The Orders allow individuals to leave their homes for many reasons, such as retail shopping, healthcare visits, worship, political expression, school, and outdoor recreation. (ECF No. 4-23 at 2.) In fact, the Regional Order expressly allows individuals to "leav[e] their residence, lodging, or other temporary accommodation as long as they do not engage in any interaction with (or otherwise gather with) any number of persons from any other household" unless the gathering is itself specifically permitted. (*Id.* at 3.) As such, Plaintiffs fail to convince the Court that the Orders actually restrict their individual ability to travel through the community in any meaningful way. Plaintiffs argue they cannot "meet and dine with small groups of friends" or go on "a leisurely Saturday walk outdoors with friends." (ECF No. 3 at 18; ECF No. 21 at 5.) However, Plaintiffs have not cited any authority to suggest there is a constitutional right to be "out and about in public" *with friends*.

---

[5] In their Complaint, Plaintiffs frame the fundamental right at issue as "the right to travel through the community." (ECF No. 1 at 11.) Plaintiffs also allege in their Complaint that they have a fundamental right to "lawfully meet with whom they please." (ECF No. 1 at 12.) However, Plaintiffs fail to develop the latter argument in the instant motion and focus instead on their alleged right to be "out and about in public."

[6] Plaintiffs rely heavily on *Cnty. of Butler v. Wolf*, 2020 WL 5510690 (W.D. Pa. Sept. 14, 2020), wherein a district court recently struck down a stay-at-home order in Pennsylvania. It bears mentioning that the Third Circuit recently stayed the *Butler* decision pending appeal. *Cnty. of Butler v. Wolf*, No. 20-2936, 2020 WL 5868393, at *1 (3d Cir. Oct. 1, 2020). Regardless, *Butler* is factually distinct and not binding on this Court.

Fourth, even assuming the Orders infringe on a constitutionally protected right, the Court finds that the current Orders likely can withstand even the highest level of scrutiny. *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008) ("When a fundamental right is recognized, substantive due process forbids the infringement of that right . . . unless the infringement is narrowly tailored to serve a compelling state interest.") (citation omitted).  The thrust of Plaintiffs' argument seems to be that the State and County's prior stay-at-home orders — which were less restrictive and based on rates of positive cases rather than ICU capacity — were sufficient to prevent spread throughout the community.  Plaintiffs argue the current Orders "bear no relationship" to the recent surge in COVID-19 cases. (ECF No. 3 at 16.)

The Court disagrees with Plaintiffs.  It is undisputed that there is a compelling state interest in preventing the spread of COVID-19, as well as preventing a situation where ICUs reach full capacity in a particular region.  Further, the stay-at-home provisions are narrowly tailored.  Defendants have provided evidence from public health officials that ICU admissions are "lagging indicators" of the spread of the virus and a strain on ICUs will overwhelm hospitals, leading to excess deaths from COVID-19 and other causes.[7]  (*See* ECF No. 16; ECF No. 18-4.)  Therefore, using ICU capacity as a metric is a narrowly tailored method for determining whether to enforce stricter lockdown provisions.  Plaintiffs emphasize the Orders have no defined end date. (ECF No. 3 at 16.)  However, the Court finds the Orders are tethered to a minimum 15 percent ICU capacity such that they will remain in effect no longer than necessary. (*See* ECF No. 4-23 at 3.)  Lastly, the Orders permit individuals to travel within the community and gather with members of other households under several circumstances as discussed.

Accordingly, Individual Plaintiffs are not likely to succeed on the merits of their substantive due process claims.

///

///

---

[7] Plaintiffs makes several evidentiary objections to Defendants' declarations. (ECF No. 24.)  However, "the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enter., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).  As such, the Court OVERRULES Plaintiffs' objections.

                *ii.*      *Closure Requirement*

Plaintiffs next argue the business closure requirement violates Business Plaintiffs' substantive due process and equal protection rights under the Fourteenth Amendment.

                *a.*      *Substantive Due Process*

At the outset, the parties agree that the business closure provisions are subject to rational basis review. Business Plaintiffs argue the provisions prohibiting all outdoor dining and closing hair salons based on ICU capacity are not rationally related to the government's legitimate interest in curbing the spread of COVID-19. (ECF No. 3 at 21.) Plaintiffs also argue that using ICU capacity as a metric for triggering the Orders is irrational because ICU capacity typically falls below 15 percent during flu season. (*Id.*)

"Under rational basis review, the Court determines whether governmental action is so arbitrary that a rational basis for the action cannot even be conceived *post hoc*." *Witt*, 527 F.3d at 817. Here, the recent, undisputed surge in COVID-19 cases — during months when ICU capacity is historically strained due to the seasonal flu — is arguably sufficient, without more, to justify the stricter public health measures under the deferential rational basis standard. But beyond that, Defendants provide evidence that restaurants, hair salons, and nail salons are at heightened risk for spreading COVID-19 due to the prolonged exposure to others in close proximity that occurs at those establishments. (ECF No. 18-4; ECF No. 16.) Indeed, the County states that even when restaurants were operating with outdoor in-person dining, at least seven percent of new cases in the County could be traced back to infections that occurred while dining out. (ECF No. 16 at 8.) The County also argues that even if ICU capacity seasonally falls below 15 percent due to the flu, the purpose of using ICU capacity as a threshold is to prevent a situation where the hospitals reach zero percent ICU capacity. (*Id.* at 5.) The County cites data provided by the California Department of Public Health showing that approximately 12 percent of persons who test positive for COVID-19 will be admitted to the hospital approximately two to three weeks later, and approximately 12 percent of those admitted to the hospital will be admitted to the ICU within the following weeks after they are symptomatic. (*Id.* at 4.)

///

The Court finds Defendants have provided ample evidence for the Orders to survive rational basis review. *Witt*, 527 F.3d at 816 (stating that "all that is required under rational basis review" is "a hypothetical justification for the policy" at issue). For these reasons, the Court finds Business Plaintiffs are unlikely to succeed on the merits of their substantive due process claims.

### b.  *Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The parties agree that rational basis review applies to Business Plaintiffs' equal protection claims. "Under rational basis review, legislation that does not draw a distinction along suspect lines such as race or gender passes muster under the Equal Protection Clause as long as 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) (citation omitted). "The government 'has no obligation to produce evidence to sustain the rationality of a statutory classification.'" *Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000) (citation omitted). Rather, "the challenger of a classification bears the burden of negating every conceivable basis which might support it." *United States v. Padilla-Diaz*, 862 F.3d 856, 862 (9th Cir. 2017) (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

Plaintiffs argue the Orders treat Business Plaintiffs differently from others similarly situated — such as catering, hair, and makeup services for the entertainment industry — and there is no rational basis for such difference in treatment. (ECF No. 3 at 24.) However, Defendants offer at least one "conceivable basis" for the difference in treatment between film and television sets on the one hand, and restaurants, bars, hair salons, and nail salons on the other. Namely, that film and television sets have a relatively consistent group of people who show up day in and day out, while restaurants, bars, and nail salons, in comparison, have new guests coming in and out every hour and every day. (ECF No. 14 at 21; ECF No. 18 at 19.) In other words, the amount of mixing between households is far greater for businesses like restaurants, bars, and nail salons, which in turn increases the risk of spread and makes contact tracing more difficult. (*Id.*) The State also attaches evidence regarding specific precautions the entertainment industry is taking to

decrease the spread of COVID-19.  (ECF No. 18-3.)  Plaintiffs do not meet their burden to negate these rational grounds for the purported difference in treatment.  *Padilla-Diaz*, 862 F.3d at 862.

Because there is at least one "conceivable basis" for treating Business Plaintiffs differently than those serving the entertainment industry, the business closure provisions will likely survive rational basis review.  *See Aleman*, 217 F.3d at 1201; *Angelotti*, 791 F.3d at 1085; *United States v. Navarro*, 800 F.3d 1104, 1114 (9th 2015) ("[R]ational-basis review allows for decisions based on rational speculation unsupported by evidence or empirical data.") (citation and internal quotation marks omitted).

Accordingly, Business Plaintiffs are unlikely to succeed on the merits of their equal protection claims.

          B.      <u>Remaining Factors</u>

Because Plaintiffs have not shown they are likely to succeed on the merits or that there are serious questions going to the merits of their claims, the Court need not address the remaining *Winter* factors.  *See Winter*, 555 U.S. at 20; *see also Alliance for Wild Rockies*, 632 F.3d at 1135.  However, the Court briefly notes that Plaintiffs also fail to convince the Court that the balance of equities weigh in their favor and that an injunction would be in the public interest.  *See Winter*, 555 U.S. at 20.  Business Plaintiffs' economic injuries and Individual Plaintiffs' somewhat restricted ability to travel through the community do not outweigh the grave harms that could result to all Californians from a widespread COVID-19 outbreak, especially during a time when the number of cases, hospitalizations, and deaths are steadily increasing and ICU capacity is decreasing.

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Plaintiffs' Motion for a Temporary Restraining Order.  (ECF No. 2.)

IT IS SO ORDERED.

DATED:  December 22, 2020

                                                  Troy L. Nunley
                                                  United States District Judge